**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James M. GRIFFIN, Defendant-Appellant.**

**No. 84–1878.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 22, 1985.

Decided June 19, 1985.

Howard B. Eisenberg, Associate Professor, Southern Ill. University, Carbondale, Ill., for defendant-appellant.

Frederick J. Hess, U.S. Atty., East St. Louis, Ill., for plaintiff-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and JAMESON, Senior District Judge.*

COFFEY, Circuit Judge.

James M. Griffin appeals the district court's denial of his petition to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. We affirm.

## I.

On April 20, 1973, Griffin was arrested in Collinsville, Illinois, by agents of the Drug Enforcement Administration. At the time of his arrest, Griffin was approximately 30 yards away from his car and was carrying 20 grams of cocaine in his pants pocket. In a search of his car at the time of his arrest, a package containing approximately 858 grams of cocaine was found in the defendant's automobile. Griffin was subsequently charged with two counts of violating 21 U.S.C. § 841(a)(1), possession of a controlled substance with intent to distribute. Specifically, one count of the indictment was based upon the 20 grams of cocaine found on Griffin's person and the second count was based upon the 858 grams of cocaine found in the defendant's car. Griffin was tried before a jury in the United States District Court for the Southern District of Illinois and was convicted on both counts of possession of a controlled substance with the intent to distribute. Griffin failed to appear for a sentencing hearing and remained a fugitive until late 1981. After he was apprehended, Griffin received two ten-year sentences to be served concurrently. Griffin appealed his conviction to this court in 1982 arguing that the district court erred both in limiting his cross-examination of a Government witness and in denying his motion to suppress the cocaine taken from his person and his automobile. Our court affirmed his conviction in an unpublished order. Following his appeal, the defendant filed a petition to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255, the equivalent of a habeas corpus petition for federal prisoners. Griffin argued that his sentence violated the double jeopardy clause because his indictment was multiplicitous, i.e., the indictment charged a single offense in more than one count. The district court found that Griffin had waived his multiplicity argument in failing to raise it either at trial or on appeal. Because Griffin failed to show cause excusing his procedural default and actual prejudice resulting from the error of which he complained, the district court denied Griffin's petition.

## II.

**A. Whether the "Cause and Prejudice" Standard Should Apply.**

█ Griffin's argument that the cause and prejudice standard should not be applied to his failure to raise his multiplicity issue either at trial or on appeal is based on two premises. First, Griffin argues that our opinion in *Norris v. United States*, 687 F.2d 899 (7th Cir.1982), applying the cause and prejudice standard to a § 2255 petition, is limited to situations in which the federal criminal defendant failed at trial to honor an established rule requiring a contemporaneous objection. Secondly, relying on a Sixth Circuit case, *United States v. Rosenbarger*, 536 F.2d 715 (6th Cir.1976), Griffin argues that Fed.R.Crim.P. 12(b)(2) and (f) do not require him to raise his multiplicity issue before trial.[1] Thus, under Griffin's theory,

---

* The Honorable William J. Jameson, Senior District Judge of the District of Montana, is sitting by designation.

1. Fed.R.Crim.P. 12 provides in pertinent part:

 \* \* \* \* \* \*

 "(b) *Pretrial Motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue

may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

 \* \* \* \* \* \*

 (2) Defenses and objections based on defects in the indictment or information ...

 \* \* \* \* \* \*

*Norris* does not apply to a challenge to a multiplicitous indictment raised under a § 2255 petition because the defendant is not required to raise the issue at trial. Since *Griffin* does not discuss the deliberate by-pass standard,[2] we are left with the logical inference that he believes that a multiplicity issue may be raised at any time.

The defendant in *Norris* presented four allegations in his § 2255 petition: (1) one of the witnesses who testified against the defendant at his trial was alleged not to be credible, 687 F.2d at 900; (2) a photo identification was unduly suggestive, *id.;* (3) the trial judge was biased, *id.* at 901; and (4) the jury was racially prejudiced. *Id.* None of these issues were presented in the defendant's direct appeal of his conviction. Our court held that the witness credibility claim did not raise a constitutional issue and, relying on *Sunal v. Lange,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), held that this claim could not be brought in the § 2255 petition because of the failure to bring the claim on direct appeal. 687 F.2d at 900.

 Turning to the remaining claims, which raise constitutional issues, we noted that the defendant failed to assert either the alleged bias of the trial judge or the racially prejudiced jury claim at trial. *Id.* at 901. Although the court contemplated holding that the failure to raise either the trial judge bias or the racially prejudiced jury claims at trial would bar the defendant from relief under section 2255, the court declined to base its holding on this ground. *Id.* After discussing the continuing vitality of *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969),

we held that the failure to bring an issue on direct appeal bars raising that issue in a § 2255 motion unless good cause for not raising the matter on direct appeal is demonstrated. *Id.* at 903–04. When applying this rule to the unduly suggestive photo identification, trial judge bias and racially prejudiced jury claims, our court did not distinguish between the claims raised at trial and those not raised at trial. *Id.* at 904. Thus, *Griffin* is in error when he argues that our holding in *Norris* was limited to situations in which the federal criminal defendant failed to honor an established rule requiring a contemporaneous objection. Simply stated, the rule propounded in *Norris* is that when a federal criminal defendant fails to argue an issue on direct appeal of his conviction, the failure to bring the issue on direct appeal bars raising that issue in a § 2255 motion unless good cause for not appealing is shown. *Id.* at 903–04. Because *Griffin* failed to include his multiplicity claim in his direct appeal, he is barred from bringing that issue in a § 2255 petition unless he is able to demonstrate good cause for his failure to appeal the issue.

 Additionally, *Griffin's* assertion that Fed.R.Crim.P. 12(b)(2) does not require him to bring his multiplicity claim before trial is in error. The Sixth, Fifth and Eleventh Circuits hold that Rule 12(b)(2) does not require a federal criminal defendant to raise a multiplicity issue before trial. *United States v. Rosenbarger,* 536 F.2d 715 (6th Cir.1976); *United States v. Cauble,* 706 F.2d 1322 (5th Cir.1983); *United States v. Mastrangelo,* 733 F.2d 793 (11th Cir.1984). The First, Second and Eighth

(f) *Effect of Failure to Raise Defenses or Objections.* Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c) or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver."

**2.** Under the deliberate bypass standard a "federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed

the orderly procedure of the state courts and in so doing has forfeited his state court remedies." *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed. 837 (1963); *see, e.g., Brownstein v. Director, Illinois Department of Corrections,* 760 F.2d 836 (7th Cir. 1985) (state criminal defendant failed to object when trial judge did not inform him of his option to be tried by jury. Defendant remained silent on advice of counsel in an attempt to obtain a ground for a new trial).

Circuits hold, to the contrary, that Rule 12(b)(2) does require a federal criminal defendant to raise a multiplicity issue before trial. *United States v. Sheehy*, 541 F.2d 123 (1st Cir.1976); *United States v. Alessi*, 638 F.2d 466 (2d Cir.1980); *United States v. Herzog*, 644 F.2d 713 (8th Cir.1981). The problem with multiplicity is that a defendant may be given multiple sentences for the same offense. "The prosecutor may accumulate offenses by alleging that the defendant's conduct violated one statutory provision more than once and considering each violation as a separate offense or by alleging that the defendant's conduct violated more than one statutory provision in charging each violation separately." 8 J. Moore, Moore's Federal Practice, § 8.07[1] (2d ed. 1984). Because multiplicity problems may appear in various forms and may not be apparent until after the government presents evidence at trial, *see, e.g., United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 225, 73 S.Ct. 227, 231, 97 L.Ed. 260 (1952), we confine ourselves to the situation at hand: a multiplicity claim based on the indictment alleging that the prosecutor improperly charged that the defendant's conduct violated the same statute twice. Important Fed.R.Crim.P. 12 principles are served by requiring defendants to bring multiplicity claims based on the indictment before trial. Rule 12 ensures that trials will be efficient and that criminal defendants will not be allowed to delay raising claims for tactical reasons. *See Davis v. United States*, 411 U.S. 233, 241, 93 S.Ct. 1577, 1582, 36 L.Ed.2d 216 (1973). In a case similar to the one at hand in which the defendant argues that possession of two separate quantities of one drug, one in his pants pocket and the other in his car, is one offense, the government will typically resist the multiplicity claim with two arguments: (1) by storing the packages in separate locations the defendant cannot claim that he was in continuous possession of the various packages, *see e.g., United States v. Horton*, 601 F.2d 319 (7th Cir.), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979); or, more importantly, (2) that the various packages contain drugs of different purity. *See, e.g., United States v. Privett*, 443 F.2d 528 (9th Cir. 1971). If the defendant were allowed to raise a multiplicity argument any time after trial, the drugs would in all probability have been destroyed and the Government would have lost the factual basis for proving the offenses were committed. Thus, it would be to the defendant's tactical advantage to delay bringing the multiplicity claim until after trial as he well knows evidence of this nature is destroyed. Furthermore, vacating a defendant's sentence when the Government is no longer able to prove by presentation of evidence that separate offenses were committed would not serve the double jeopardy goal of preventing courts from imposing a sentence greater than that authorized by the legislature. "[A]cts constituting a course of conduct are not punishable separately if the Legislature intends to punish the course of conduct." *United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir.1976). *See, e.g., United States v. Bennett*, 623 F.2d 52 (8th Cir. 1980) (three crap games constitute a single offense of running a gambling business, not three separate offenses); *United States v. Hodges*, 628 F.2d 350 (5th Cir. 1980) (simultaneous possession of two firearms constitutes a single offense). On the other hand, in many situations the evidence supports multiple charges because the defendant's acts constitute more than one transaction. *See, e.g., United States v. Privett*, 443 F.2d 528 (9th Cir.1971) (possession of packets of heroin of differing purity on person, under car seat, and in car trunk, constitutes more than one transaction and may be prosecuted in multiple counts). If the defendant was required to set forth his claim before trial, the evidence may possibly show that the statute was violated twice and that the Double Jeopardy claim was without basis. In other words, the prosecutor's interpretation of the statute may very well follow the legislature's intent but, if the defendant is allowed to bring a multiplicity claim after trial, the prosecutor may no longer be able to reconstruct the evidence much less justify the multiple charges. We are not only con-

cerned with the individual's rights but also with society's right to charge the defendant with each offense committed. "While all judges have the obligation to protect individual rights the judge must not lose sight of the common good of all mankind ... Our laws are for the protection of all mankind and not just for the criminal." *United States v. Madison,* 689 F.2d 1300, 1314–15 (7th Cir.1982). Because efficiency and fairness would be better served by allowing courts to determine multiplicity claims based on the indictment while the evidence is still available to assess the defendant's claim, we join the First, Second and Eighth Circuits and hold that Fed.R. Crim.P. 12(b)(2) requires a criminal defendant to raise a multiplicity claim based on the indictment before trial.

█ Because Fed.R.Crim.P. 12(b)(2) requires defendants to bring multiplicity claims based on the indictment before trial, the Supreme Court's decision in *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), bars Griffin from arguing that the plain error standard of Fed.R.Crim.P. 52(b) should govern the question of whether he waived his right to challenge his allegedly multiplicitous indictment. Frady attempted to challenge the jury instruction given at his trial in a § 2255 petition even though he had not challenged the instruction at trial or on direct appeal. The Supreme Court held that, the plain error standard is "out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal." *Id.* at 164, 102 S.Ct. at 1592. Thus, the Court held that the cause and prejudice standard rather than the plain error standard must be applied to Frady's double procedural default. *Id.* at 167–68, 102 S.Ct. at 1594.

**B. Application of the Cause and Prejudice Standard**

█ Relying on *Reed v. Ross,* —— U.S. ——, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984),

Griffin argues that he has "cause" for not raising his multiplicity argument because the circuits are split on the question of whether a defendant must raise a multiplicity claim based on the indictment before trial. In *Reed,* the Supreme Court held "that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." 104 S.Ct. at 2910. Initially, we note that *Reed* applies to novel constitutional theories rather than procedural questions. *See id.* at 2911. However, even if we were to agree with the defendant that *Reed* also applies to procedural questions and that a split in the circuits qualifies to render a question "novel" as that term is utilized in *Reed,* the defendant's argument still fails because it does not explain why he did not raise his multiplicity claim on appeal. When the cause and prejudice standard is applied, the defendant must satisfy both the cause and prejudice elements. *See Frady,* 456 U.S. at 168, 102 S.Ct. at 1594. Because Griffin is unable to demonstrate cause excusing his double procedural default, we need not address the question of whether he was "actually prejudiced."

**C. Multiplicity.**

█ Finally, even if we were to disregard the defendant's waiver of his multiplicity claim, we would hold that the defendant's claim fails on the merits. "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Griffin argues that his acts constitute one transaction rather than two. At the time of his arrest, Griffin was carrying approximately 20 grams of cocaine in a plastic bag on his person. Another package containing approximately 858 grams of cocaine was found some thirty feet away from Griffin on the front floorboard of his car. At trial,

a chemist employed by the Drug Enforcement Administration testified that his analysis of the sample taken from the 858-gram package revealed that it contained 35½ percent cocaine hydrochloride. The remainder of the powder consisted of lactose, i.e., common sugar. The chemist's analysis of the powder in the 20-gram packet revealed that the powder contained 44.8 percent cocaine hydrochloride. The remainder of the powder was a mixture of sugar and a trace of procaine. Thus, like the situation in *Privett*:

> "[d]ifferent facts as to the purity of the [cocaine] and its location were involved in each of the counts. Different acts of the appellant were involved in each count. Since different proof was required as to each of the ... counts ... the counts stated separate offenses."

*Privett*, 443 F.2d at 531. Because the proof clearly demonstrates two separate crimes of possession of cocaine with intent to distribute in that cocaine of different purity and different quantity was stored in separate locations, we hold that Griffin's double jeopardy right was not violated when he was charged with two counts of violating 21 U.S.C. § 841(a)(1).

The decision of the district court is AFFIRMED.